PER CURIAM.
This disciplinary proceeding is before the Court for consideration of the referee’s report. In response to the complaint of The Florida Bar, attorney Jeffrey J. Fitos filed a conditional guilty plea, which was accepted by the referee.
The referee found the facts to be as follows:
As to Count I
1. The respondent began negotiating with Valley Forge Military Academy in Pennsylvania for a faculty position several months prior to the close of his law practice. He received an offer of employment in early September, 1986, and decided in mid-September, 1986, to accept it.
2. The respondent arranged for another attorney to handle some of the cases and entered into an agreement whereby the respondent would receive ten percent of any attorney’s fees collected. He entered into this agreement without prior knowledge and consent of the affected clients.
As to Count II
3. The respondent represented Mary Lou Burdsall in a wrongful termination of employment action. A hearing on a motion to dismiss was scheduled for September 22, 1986, before Circuit Judge, Wallace E. Sturgis. The client had no notice of the hearing.
4. Ms. Burdsall called the respondent’s office on September 22, 1986, and was advised by the answering service that the office was closed. She then called the judge’s office and was advised the hearing she had no prior notice of had been cancelled that morning. The judge's secretary stated the respondent had previously cancelled other hearings and was giving up the practice of law and leaving the area.
5. Ms. Burdsall again called the respondent’s office and left a message requesting him to contact her early the next day or she would notify The Florida Bar. The respondent called her the following day and advised he had turned the case over to another attorney, David Eddy. He further stated that he, the respondent, would represent her if the case proceeded to trial. Ms. Burdsall had no contact with Mr. Eddy, and he later declined to accept her case. Respondent later sent her a letter stating he had arranged with a different attorney to handle it. That attorney also declined. Finally, respondent failed to file a Motion to Withdraw or advise his client of his intent to leave the practice prior to doing so.
6. Ms. Burdsall was unable to find other counsel and dismissed the case herself.
As to Count III
7. During the first week of September, 1986, the respondent was retained by Roderick P. Desrosiers to represent him on a DUI charge.
8. On September 24, 1986, Mr. Desrosi-ers received a letter dated September 22, 1986, from the respondent notifying him of his decision to move to Pennsylvania and that he had arranged for David Eddy to handle the case. Respondent did not advise the client of his intent to leave the practice when he accepted the case. He did not consult with the client about transferring this case to another attorney nor did he have the client’s permission to do so when he did. He also withdrew without any appropriate motion or order and had inadequate communication with the client throughout the representation.
9. Mr. Desrosiers subsequently pled no contest, was adjudicated and spent forty-five days in jail work release of which he served twenty-four days. His main fear had been going to jail.
As to Count IV
10. In mid-August, 1986, the respondent was retained by Jessie Walker, Sr. to represent his son, Leonard T. Walker, on *371 a drug possession charge, was paid some $2,800. Respondent
11. The Walkers had no contact with the respondent after a bond reduction hearing was held on August 25, 1986, until they received a letter dated September 22, 1986, advising them the respondent was leaving the practice of law to teach in Pennsylvania. He further advised David Eddy would be handling the case. He declined. Mr. Walker was thereafter unable to contact the respondent despite numerous telephone calls. 12. Mr. Walker retained another attorney who was successful in having the bond reduced. Again, respondent failed to file a Motion to Withdraw as required.
As to Count V
13. The respondent was retained by Bobbie Sue Holt in April, 1986, to represent her son on five felony charges. 14. In mid-September, 1986, Mrs. Holt, went to the respondent’s office where she was advised by the secretary he had moved his office. Another client came in and informed Mrs. Holt the respondent was leaving the state. The respondent then came in and advised her he had transferred the case to Mr. Eddy. 15. Although the respondent completed the main representation, he failed to notify his client he was leaving the practice of law. He also failed to make proper arrangements to withdraw or transfer the case.
As to Count VI
16. In August, 1986, Lillian Cohen retained the respondent to represent her father, Alex Cohen, on charges of cocaine importation.
17. In mid-September, 1986, Ms. Cohen learned from another attorney who practiced in the same building as the respondent that he was leaving the practice and moving to Pennsylvania.
18. The respondent failed to advise his client that he was leaving the state or that Mr. Eddy was going to handle the case. Ms. Cohen found out about Mr. Eddy at a bond reduction hearing in October, 1986. Respondent again filed no Motion to Withdraw in the case.
The Cohens decided not to hire Mr. Eddy and retained other counsel. 20. The respondent also represented the Cohens in a bankruptcy action. Upon his advice, the Cohens filed a Chapter 11 bankruptcy for their business on or about September 4, 1986. 19.
21. After doing the initial filing, the respondent turned the matter over to Paul Ashe to handle without his client’s knowledge or consent and without filing a Motion to Withdraw.
As to Count VII
22. The respondent represented Lloyd Bedford, Floyd Bedford, and Brooks Gosselin in a criminal matter.
23. The respondent negotiated a plea on his clients’ behalf and filed a notice of appeal of an order denying suppression of their statements on April 18, 1986, in the Fifth District Court of Appeal. The respondent later filed a voluntary dismissal of the appeal without his clients’ knowledge or permission.
24. After their release in July, 1986, the Bedfords visited the respondent’s office and were advised he would take further actions in their behalf including administrative remedies with the Police Standards Board, securing the return of some of their property, and filing charges against the complainants in the criminal case.
25. The Bedfords called the respondent’s office in September, 1986, regarding the receipt of a subpoena from the Police Standards Board. The secretary advised them the respondent was no longer in business; the file was closed; and it had been placed in storage.
26. The Bedfords were provided only with one partial accounting for their fees and costs on August 27, 1985, notwithstanding several requests for a complete accounting.
On count one, the referee recommended that respondent be found guilty of violating the former Florida Bar Code of Professional Responsibility, Disciplinary Rule 2-107(A), for entering into an improper fee agreement with another attorney without notice to and consent of the affected clients.
*372 On counts two, three, four, five, six, and seven, the referee recommended that respondent be found guilty of violating the former Florida Bar Integration Rule, article XI, rule 11.02(3)(a), for behavior contrary to honesty, justice, or good morals, and Disciplinary Rules 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); 1-102(A)(6) (conduct adversely reflecting on fitness to practice law); 2-110(A)(l) (withdrawal from representation without permission of the tribunal); 2-110(A)(2) (withdrawal from representation without taking steps to avoid prejudice to clients); and 6-101(A)(3) (neglecting a legal matter).
The referee recommended that respondent be found guilty of the following additional violations on count seven: Disciplinary Rules 1-102(A)(5) (conduct prejudicial to the administration of justice); 7-101(A)(1) (failure to seek client’s lawful objectives); 7-101(A)(2) (failure to carry out a contract of employment); 7-101(A)(3) (prejudicing the rights of a client); and 9-102(B)(3) (failure to render an accounting to a client on request).
As provided in respondent’s conditional guilty plea, the referee recommends that respondent be suspended from the practice of law for one year with proof of rehabilitation required prior to reinstatement as provided by rule 3-5.1(e) of the Rules Regulating The Florida Bar. We approve the referee’s report and order Jeffrey J. Fitos suspended from the practice of law in this state for one year.
The costs of this proceeding are taxed against the respondent. Judgment is entered against Jeffrey J. Fitos for costs in the amount of $2,053.76, for which sum let execution issue.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.